DIANE F. BOYER-VINE (SBN: 124182)
    Legislative Counsel
ROBERT A. PRATT (SBN: 137704)
    Principal Deputy Legislative Counsel
CARA L. JENKINS (SBN: 271432)
    Deputy Legislative Counsel
Office of Legislative Counsel
925 L Street, Suite 700
Sacramento, California  95814
Telephone:  (916) 341-8245
Facsimile:  (916) 341-8290

Attorneys for Amicus Curiae
California State Legislature

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTOM YUMEKA MAIDU TRIBE OF THE ENTERPRISE RANCHERIA, CALIFORNIA,<br><br>    Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA,<br><br>    Defendant. | CASE NO. 2:14-cv-01939-TLN-CKD<br><br>AMICUS CURIAE BRIEF OF THE CALIFORNIA STATE LEGISLATURE<br><br>Judge:     Hon. Troy L. Nunley<br>Action Filed:  August 20, 2014 |

    The California State Legislature respectfully submits this *amicus curiae* brief in the matter of *The Estom Yumeka Maidu Tribe of the Enterprise Rancheria, California v. State of California*.

**Interest of *Amicus Curiae***

    *Amicus curiae* is the California State Legislature, which is vested with the legislative power of the State. Cal. Const. art. IV, § 1.  This legislative power includes the inherent power to implement the procedural requirements prescribed by the California Constitution related to the enactment of legislation under section 7(a) of article IV of the California Constitution, as reflected in the established rules, customs, and practices of each house of the Legislature.  Plaintiff Estom Yumeka Maidu Tribe of the Enterprise Rancheria, California ("Enterprise Rancheria") brings into

---

1
APPLICATION OF THE CALIFORNIA STATE LEGISLATURE FOR LEAVE TO FILE AMICUS CURIAE BRIEF

question in this matter the scope of these well-established procedures as it relates to the Legislature's ratification of Tribal-State compacts in California pursuant to section 19(f) of article IV of the California Constitution. As a matter of first impression, the decision of this Court could have potentially significant effects on the Legislature's powers, and may impact the constitutional deference accorded to the legislative branch of California state government. As such, it is incumbent upon the California Legislature to offer its perspective on this issue.

**Argument**

The question before the Court, as raised by Plaintiff Enterprise Rancheria, is whether the Legislature's conduct with respect to Assembly Bill 1098 (2013-14), the bill that would have served to ratify the Tribal-State gaming compact between the State of California and Plaintiff Enterprise Rancheria ("the Compact"), constituted a failure on the part of the State to negotiate in good faith to enter into an enforceable Tribal-State gaming compact under the Indian Gaming Regulatory Act ("IGRA").  25 U.S.C. § 2710(d)(3).  Plaintiff has requested that the Court make a finding that the State has failed to negotiate in good faith and order the State to conclude a gaming compact with Plaintiff Enterprise Rancheria.

Despite Plaintiff's contentions, the constitutional requirements placed on the Legislature related to the ratification of Indian gaming compacts were, in fact, complied with.  Moreover, Plaintiff's specific claims as to the Legislature are unsupported by law, as the Legislature is not required to ratify a compact within  a prescribed period of time, nor is it required to negotiate or propose new terms to a compact. Consequently, the Legislature's conduct with respect to the ratification of the Compact cannot be deemed a failure of the State to negotiate in good faith.

I.  <u>By enacting IGRA, Congress recognized that states have an interest in the regulation of gaming on Indian lands within their borders.</u>

In 1988, Congress enacted the federal Indian Gaming Regulatory Act of 1988, which establishes a regulatory system of gaming on Indian lands. 25 U.S.C. § 1166 et seq.; 25 U.S.C. § 2701 et seq. In doing so, Congress recognized the states' interests in the regulation of gaming on Indian lands within their borders and, therefore, allowed states to have a role in the regulation of class II and class III gaming in two ways. First, if a state has enacted laws that explicitly prohibit

certain forms of Class II gaming and those games are not otherwise played in the state, an Indian tribe may not conduct that gaming. 25 U.S.C. § 2703(7). Second, an Indian tribe may not engage in class III gaming unless certain requirements are met, including that a tribe must enter into a Tribal-State compact with the State. 25 U.S.C. § 2710(d)(1).

Moreover, as IGRA does not mandate a specified procedure by which all states must enter into a Tribal-State compact, courts have reasoned that Congress' silence on this point shows an intention that state law determine the procedure for executing valid gaming compacts. *Pueblo of Santa Ana v. Kelly,* 104 F.3d 1546, 1558 (10th Cir. 1997). As a result of the approval of Proposition 1A at the March 7, 2000, statewide primary election, subdivision (f) was added to Section 19 of Article IV of the California Constitution, which authorizes the Governor "to negotiate and conclude compacts, subject to ratification by the Legislature…" Cal. Const. art. IV, § 19. Thus, the California Constitution establishes a bifurcated process in which the Governor is vested with the authority to negotiate and conclude compacts with tribes, while the Legislature is vested with the power to ratify these compacts. This two-step procedure is similarly reflected in Section 12012.25 of the Government Code, which provides statutory authorization for the Governor to negotiate and execute Tribal-State gaming compacts on behalf of the State, and for ratification of those compacts approved by each house of the Legislature. Cal. Gov. Code § 12012.25 (c)-(d).

As set forth in detail below, the ratification process for the Compact followed established legislative procedures pursuant to the power vested in the Legislature by the California Constitution. In order to bind the State there must not be only agreement of the Governor, but also approval by ratification of the Legislature. Viewed in the context of the totality of the State's negotiations with Plaintiff, the Legislature's conduct was objectively reasonable and, therefore, did not result in the State's failure to negotiate in good faith.

II. <u>The Legislature's conduct related to ratification of the Compact did not result in the State's failure to negotiate in good faith.</u>

   A. *The Legislature's ratification process was objectively reasonable.*

Under IGRA, the good faith of a state negotiating a compact is evaluated <u>objectively</u> based on the records of negotiations, in the context of the totality of the negotiations. *Rincon Band of*

*Luiseno Mission Indians of the Rincon Reservation v. Schwarzenegger*, 602 F.3d 1019, 1041 (9th Cir. 2010); see *In re Indian Gaming Related Cases*, 147 F. Supp. 2d 1011, 1022 (N.D. Cal. 2001) aff'd, 331 F.3d 1094 (9th Cir. 2003). In *Rincon*, the state's belief that IGRA permitted revenue sharing was deemed objectively unreasonable because IGRA expressly condemns state attempts to compel fees for purposes other than those specified in 25 U.S.C. § 2710 (d)(3)(C)(iii). In the instant case, however, the dispute arises not from the terms of the Compact but, rather, from the *process* of entering into a valid compact.

As such, this is a matter of first impression. Because IGRA does not address how a state and an Indian tribe enter into a valid compact, the 10th Circuit recognized that its "very silence on this point supports the view that 'Congress intended that state law determine the procedure for executing valid gaming compacts.'" *Pueblo of Santa Ana,* 104 F.3d at 1558. Thus, to determine whether the Legislature acted in good faith under IGRA, a court should examine the Legislature's actions within the context of the *legislative process*.

In California, the legislative power of the state is conferred by the California Constitution upon the Legislature, acting by and through its individual Members. Cal. Const. art. IV, § 1. The legislative power is plenary and exercised at the discretion of the Members of the Legislature. *California Redevelopment Assn. v. Matosantos*, 53 Cal. 4th 231, 254-255, 135 Cal. Rptr. 3d 683 (2011). As a legislative body, the Legislature possesses the power to govern its own internal affairs, including the rules governing its own proceedings and process.  Cal. Const. art. IV, § 7. Generally, courts will not interfere with the operation of the legislative process; instead, courts will defer to the actions of the Legislature, and presume that the Legislature acted with proper motives.  *Schabarum v. California Legislature*, 60 Cal. App. 4th 1205, 1214-15, 70 Cal. Rptr. 2d 745 (1998). "The legislative role necessitates that policy decisions be made…Respect for the Legislature's constitutional role demands that courts refuse to judge the …motives of the legislators." *Id.* at 1219, citing *California Teachers Assn. v. Hayes*, 5 Cal. App. 4th 1513, 7 Cal. Rptr. 2d 699 (1992).  Courts interpreting IGRA have also been reluctant to disturb the operation of the legislative process.  See, *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin v. U.S.*, 367 F.3d 650, 665 (7th Cir. 2004).

In order to avoid interfering with the Legislature's power, an inquiry under IGRA into whether Tribal-State gaming compacts were negotiated in good faith must be evaluated in the context of the Legislature's normal legislative process and whether, within the totality of the negotiations, the process the Legislature undertook to ratify the Compact was objectively reasonable. *Rincon*, 603 F.3d at 1041. This approach is consistent with the purposes of IGRA because it respects the state's sovereign interest to determine its own process for participating in the operation of class II and class III gaming within its own boundaries, while ensuring that the good faith obligation is complied with. Indeed, the failure of the Legislature to ratify a Tribal-State gaming compact cannot be construed, as claimed by Plaintiff, to be *per se* conclusive evidence of the State's failure to negotiate in good faith. To do so would render the power vested with the Legislature to ratify compacts meaningless.

But Plaintiff claims that the Legislature not only failed to ratify, but that it took no action at all related to the ratification of the Compact. (Compl. ¶ 73.) This is simply not true. The Legislature accepted the Compact from the Governor shortly after it was signed on August 30, 2012. The Senate subsequently sought input and suggestions from stakeholders in an effort to better understand the impact of Tribal-State gaming compacts, including the Enterprise Rancheria Compact, on the State. On May 27, 2014, the Compact was amended into Assembly Bill 1098 (AB 1098). http://www.leginfo.ca.gov/pub/13-14/bill/asm/ab_1051-1100/ab_1098_bill_20140528_history.html (last visited on February 9, 2015). On May 28, 2014, AB 1098 was referred to the Senate Committee on Rules. *Id*. Thereafter, AB 1098 was allowed to remain with the Senate Committee on Rules, a decision consistent with internal legislative rules permitting the Rules Committees of each house to refer bills to a policy committee, or to retain the bill as the Committee sees fit. Assembly Rule 14(a), Senate Rule 13(g).[1]

It is important to note that out of the thousands of bills introduced each year, only a relatively small percentage are actually taken up for a vote. As with the other thousands of bills that were not voted on in the 2013-14 legislative session, it would be impossible to impute any particular motive

---

[1] Judicial notice is requested for the official records cited in this paragraph, which can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned. Fed. R. Evid. 201.

5
APPLICATION OF THE CALIFORNIA STATE LEGISLATURE FOR LEAVE TO FILE AMICUS CURIAE BRIEF

to the Legislature to explain why AB 1098 was not taken up.  Certainly, it would be inappropriate to attribute to the Legislature as a whole the motives of any individual Member.   Even where a court performs a careful examination of the nature and purpose of state legislation, it may look only to the intent of the Legislature as a whole, and not to the motives of individual Members. See *U.S. Trust Co. v. New Jersey*, 431 U.S. 1, 97 S. Ct. 1505, 52 L. Ed. 2d 92 (1977); *Board of Administration v. Wilson*, 52 Cal. App. 4th 1109, 1153, 61 Cal. Rptr. 2d 207 (1997); *Valdes v. Cory*, 139 Cal. App. 3d 773, 786, 189 Cal. Rptr. 212 (Ct. App. 1983).  Thus, the motives of individual Members for not bringing AB 1098 to a vote are not relevant to the Court's determination of whether IGRA was complied with.

An examination of the Legislature's ratification process of Tribal-State compacts over the past 15 years reveals that all of the compacts were ratified by statute. California Gambling Control Commission, Ratified Tribal-State Gaming Compacts (New and Amended), http://www.cgcc.ca.gov/?pageID=compacts (last visited February 6, 2015).  As there is no legislative rule that compels the houses to pass a bill ratifying a compact within a certain period of time once the compact has been accepted from the Governor, the length of time required to ratify any given compact by statute has varied. Some compacts were introduced in bills at the beginning of a legislative session, while others were amended into other bills at some time during a two-year session. Some were referred to one policy committee, while others were referred to several policy committees for consideration. Some included urgency clauses that allowed the bills to take effect immediately upon enactment, while others did not. Some were placed on a consent calendar, which allows "noncontroversial" bills to be passed as a group from one committee to another committee or to the full Assembly or Senate without discussion, while others were not. http://www.leginfo.ca.gov/ (last visited February 6, 2015).

In sum, the legislative process for any given bill is varied and unpredictable. Moreover, it is common for a bill not to be voted on within a legislative session.  Many bills are reintroduced from one legislative session to another. To the extent that there is a "normal" legislative process as dictated by the Legislature's power to govern its own internal affairs, the Legislature complied with that process with regard to AB 1098 and, therefore, was objectively reasonable in its actions.

B. *The Legislature was not required to ratify the Compact within a prescribed period or to propose new Compact terms.*

Again, California law precludes judicial interference with the operation of the legislative process and there is a presumption that the Legislature acted with proper motives in its processing of AB 1098.  Nevertheless, Plaintiff contends that the State did not act in good faith because the Legislature failed to ratify the Compact or propose new terms to the negotiating parties so that an agreement could be reached. (Compl. ¶¶ 52, 66, 72.)

We first address the allegation that the Legislature was required to ratify the Compact within a prescribed period.  Plaintiff Enterprise Rancheria has not provided any authority that would compel the Legislature to ratify the Compact at all, let alone ratify it within a prescribed period of time. Ratification, by its very nature, is an expression by the Legislature of its assent or dissent to the Tribal-State compact negotiated between the Governor and the Indian tribe—and there is always the possibility that the Legislature may not ratify.

IGRA provides that an Indian tribe may initiate a cause of action arising from the failure of a State to (1) enter into negotiations with the Indian tribe for the purpose of entering into a Tribal-State compact or (2) conduct such negotiations in good faith "*only after the close of the 180-day period beginning on the date on which the Indian tribe requested the State to enter into negotiations*" for the purpose of entering into a Tribal-State compact governing the conduct of gaming activities. 25 U.S.C. § 2710(d)(7)(B)(i); emphasis added.

In other words, a tribe cannot initiate suit in federal court until at least 180 days have lapsed since it requested the state to enter into negotiations, *and* either the State failed to enter into those negotiations or the State failed to conduct those negotiations in good faith.  See *Seminole Tribe of Florida v. State of Fla.*, 11 F.3d 1016 (11th Cir. 1994) aff'd sub nom. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996).  This provision of IGRA only establishes the jurisdiction of the federal court and the minimum number of days that an Indian tribe must wait before initiating a lawsuit arising from the state's failure to either enter into negotiations with the tribe or to conduct those negotiations in good faith. And this makes sense because, under IGRA, a tribe may decide, in lieu of filing suit, to continue negotiating with a state past the 180-day

period.  The 180-day period is, thus, a delay for a tribe to commence a claim, not a deadline by which a compact must be concluded. Furthermore, "IGRA's terms do not force the State to enter into a compact, it only demands good faith negotiation in order to meet state, as well as tribal and federal, interests." *Yavapai-Prescott Indian Tribe v. State of Ariz.*, 796 F. Supp. 1292 (D. Ariz. 1992) (state required to engage in good-faith negotiations, not consent to proposed compact).

It is clear that IGRA imposes no express deadline for the state to enter into, or conclude, a Tribal-State compact. Because IGRA defers to state law to determine the procedure for executing a valid gaming compact, its provisions cannot reasonably be interpreted to impose a timeline to enter into a Tribal-State compact.  *Pueblo of Santa Ana,* 104 F.3d at 1558.

In contrast to the deadlines expressly stated elsewhere in IGRA, there are no provisions in IGRA requiring that a state enter into, or conclude a Tribal-State compact within a prescribed period. For instance, 25 U.S.C. § 2710(7)(B)(iii) provides that if the court finds that a state has failed to negotiate in good faith to conclude a Tribal-State compact, the court shall order the state and the Indian tribe to "<u>conclude such a compact within a 60-day period.</u>" (emphasis added.)  Also, 25 U.S.C. § 2710(7)(B)(iv) provides that if a state and an Indian tribe fail to conclude a compact within this 60-day period, the Indian tribe and the state shall each submit to a mediator a compact that represents their last best offer. "If a State consents to a proposed compact <u>*during the 60-day period beginning on the date in which the proposed compact is submitted*</u> by the mediator to the State, the proposed compact shall be treated as a Tribal-State compact entered into." 25 U.S.C. § 2710(d)(7)(B)(iv)-(vi) (emphasis added). Thus, if Congress had intended to impose a specific timeframe for a state to enter into, or conclude a Tribal-State compact, it would have said so. But IGRA contains no such deadline.

There is even less merit to Plaintiff Enterprise Rancheria's contention that the Legislature was required to convey its objections or propose new terms to the negotiating parties so that an agreement could be reached. While the general principles of negotiation cited by Plaintiff may apply in circumstances where two parties are working towards an agreement, those principles have no application to a bifurcated process involving two branches of state government.

///

IGRA authorizes state officials acting pursuant to their authority held under state law to enter into gaming compacts on behalf of the state. *State ex rel. Clark v. Johnson*, 1995-NMSC-048, 120 N.M. 562, 567, 904 P.2d 11, 26. But, as previously noted, subdivision (f) of Section 19 of Article IV of the California Constitution creates separate roles for the Governor and the Legislature with regard to negotiation, conclusion, and ratification of Tribal-State gaming compacts. These powers are independent of each other, and consequently, under subdivision (f), the Legislature is not required to have any direct role in negotiating and concluding Tribal-State compacts, and the Governor has no direct role in their ratification. This comports with the doctrine of separation of powers, which separates the powers of the government into three branches and precludes one branch from exercising the powers given to another. Cal. Const. art. III, § 3. Consistent with their constitutionally-mandated powers, the Governor and the Legislature have different roles with respect to Tribal-State compacts. The Governor's negotiation of compacts is equivalent to the execution of law, and the Legislature's power to ratify is consistent with its authority to create laws. None of the authority cited by Plaintiff supports an interpretation of IGRA that would require the Legislature to step beyond its constitutional powers by negotiating or proposing new terms to a compact.[2]

Moreover, Plaintiff's reliance on case law interpreting the National Labor Relations Act (NLRA) to analyze the duty of good faith negotiations under IGRA is unavailing. Courts have not applied case law interpreting the NLRA wholesale to cases that require an interpretation of IGRA. As the court in *In re Indian Gaming Related Cases* recognized, "the relation of employers to unions is not analogous to that of States to tribes." *In re Indian Gaming Related Cases*, 147 F. Supp. 2d at 1020. Not only is the employer-labor union relationship dissimilar to the Indian tribe-State relationship, but the processes by which these agreements are formed cannot be analogized because the bifurcated process of forming Tribal-State compacts is unique. Only with respect to Tribal-State compacts does the California Constitution assign distinct roles to the executive and legislative

---

[2] In fact, Plaintiff concedes it attempted no negotiations since the Compact was transmitted to the Legislature by the Governor after it was signed on August 30, 2012, and that no agreement has been made or sought to extend the Compact's expiration date. As Plaintiff itself has declined to attempt any further negotiations or to seek an agreement to extend the expiration date, Plaintiff cannot reasonably assert that the Legislature's ratification procedure alone constitutes a refusal to negotiate in good faith. See, *In re Indian Gaming Related Cases*, 147 F. Supp. 2d at 1021-22.

branches.  The NLRA cases do not contemplate the constitutionally-mandated bifurcated process involved in ratifying a Tribal-State compact.  Thus, in the NLRA cases cited by Plaintiff, a single entity was responsible for both negotiating and ratifying (by signing) the labor agreements there at issue.  This bears no semblance to the ratification process of Tribal-State compacts in California, which requires that compacts be negotiated and ratified by separate entities (the Governor and the Legislature, respectively).

**Conclusion**

Plaintiff's claim that the Legislature's failure to ratify the Compact negotiated with the Governor constitutes a failure on the part of the State to negotiate in good faith under IGRA is without merit.  Plaintiff fails to take into account the internal procedures of the Senate and Assembly to undertake the legislative action of ratification, or the unique role with respect to the ratification of compacts that is assigned to the Legislature under California's Constitution.  On the basis of the foregoing, the California State Legislature supports Defendant State of California's position that the State's negotiations in regards to the Enterprise Rancheria Compact were conducted in good faith.

Dated:  March 5, 2015

Respectfully submitted,
DIANE F. BOYER-VINE

Legislative Counsel

By: /s/ Cara L. Jenkins
    CARA L. JENKINS
    Deputy Legislative Counsel

Attorneys for *Amicus Curiae*
California State Legislature

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTOM YUMEKA MAIDU TRIBE OF THE ENTERPRISE RANCHERIA, CALIFORNIA,<br><br>    Plaintiff,<br><br>    v.<br><br>STATE OF CALIFORNIA,<br><br>    Defendant. | CASE NO. 2:14-cv-01939-TLN-CKD<br><br><br>CERTIFICATE OF SERVICE |

I hereby certify that, on March 5, 2015, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court for the Eastern District of California using the CM/ECF system, which sent notification of such filing to counsel of record in this case.

/s/ Cara L. Jenkins

CARA L. JENKINS (SBN 271432)
Deputy Legislative Counsel
Office of Legislative Counsel
925 L Street, 7th Floor
Sacramento, CA  95814
Telephone: (916) 341-8245
Facsimile: (916) 341-8290
E-mail: cara.jenkins@lc.ca.gov