DANIELLE SPINELLI (*pro hac vice*)
CHRISTOPHER E. BABBITT (SBN 225813)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363
E-mail: christopher.babbitt@wilmerhale.com

JOHN A. MAIER (SBN 191416)
MAIER PFEFFER KIM GEARY & COHEN LLP
1440 Broadway, Suite 812
Oakland, CA  94612
Telephone:  (510) 835-3020
Facsimile:  (510) 835-3040
E-mail: jmaier@jmandmplaw.com

Attorneys for Plaintiff
THE ESTOM YUMEKA MAIDU TRIBE OF THE
ENTERPRISE RANCHERIA, CALIFORNIA

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTOM YUMEKA MAIDU TRIBE OF THE ENTERPRISE RANCHERIA, CALIFORNIA,<br><br>        Plaintiff,<br><br>   v.<br><br>STATE OF CALIFORNIA,<br><br>        Defendant. | Case No. 14-cv-01939<br><br><br><br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF ESTOM YUMEKA MAIDU TRIBE OF THE ENTERPRISE RANCHERIA'S MOTION FOR JUDGMENT ON THE PLEADINGS AND OPPOSITION TO THE STATE OF CALIFORNIA'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS** |

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.    IGRA'S DUTY OF GOOD FAITH NEGOTIATION APPLIES TO THE
      STATE AS A WHOLE AND ENCOMPASSES EVERY ASPECT OF THE
      COMPACTING PROCESS ...................................................................................... 2

      A.    The State As A Whole Has An Obligation To Negotiate Toward
            An Enforceable Agreement .......................................................................... 3

      B.    The Duty To Negotiate In Good Faith Encompasses Every Step
            Of The Compacting Process Necessary To Enter Into An
            Enforceable Agreement ................................................................................ 6

      C.    State Sovereignty And Law Provide No Basis To Excuse The
            Legislature From Its Good Faith Negotiation Obligation ....................... 9

II.   THE STATE HAS FAILED TO NEGOTIATE IN GOOD FAITH ........................... 13

III.  THE STATE'S PROPOSED "REMEDY" IS INCONSISTENT WITH
      IGRA'S REMEDIAL SCHEME ............................................................................. 15

IV.   THE TRIBE'S SUIT IS NOT BARRED BY THE STATE'S SOVEREIGN
      IMMUNITY ............................................................................................................. 16

CONCLUSION ................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Biggs v. Wilson*,
   1 F.3d 1537 (9th Cir. 1993) .................................................................... 10, 13

*California v. Cabazon Band of Mission Indians*,
   480 U.S. 202, 107 S. Ct. 1083 (1987) ........................................................ 9

*Cheyenne River Sioux Tribe v. State of S.D.*,
   3 F.3d 273 (8th Cir. 1993) ...................................................................... 11, 12

*Confederated Tribes of Siletz Indians of Oregon v. United States*,
   110 F.3d 688 (9th Cir. 1997) ..................................................................... 9

*Continental Ins. Co. v. NLRB*,
   495 F.2d 44 (2d Cir. 1974) ........................................................................ 14

*Dalton v. Pataki*,
   835 N.E.2d 1180 (N.Y. 2005) ................................................................... 12

*Delaney v. Baker*,
   971 P.2d 986 (Cal. 1999) .......................................................................... 17

*Flandreau Santee Sioux Tribe v. S. Dakota*, No. CIV. 07-4040,
   2011 WL 2551379 (D.S.D. June 27, 2011) ............................................. 8

*Garcia v. San Antonio Metropolitan Transit Authority*,
   469 U.S. 528, 105 S. Ct. 1005 (1985) ...................................................... 9

*Gillette Co. v. Franchise Tax Bd.*,
   209 Cal. App. 4th 938 (2012) *review pending*, 291 P.3d 327 (Cal. 2013) ............................. 12

*H.J. Heinz Co. v. NLRB*,
   311 U.S. 514, 61 S. Ct. 320 ........................................................................ 7, 8, 13

*H. K. Porter Co. v. NLRB*,
   397 U.S. 99, 90 S. Ct. 821 (1970) ............................................................. 9

*Hotel Employees & Restaurant Employees Intl. Union v. Davis*,
   981 P.2d 990 (1999) .................................................................................... 6

*Howard Jarvis Taxpayers' Assn. v. Fresno Metro. Projects Auth.*,
   40 Cal. App. 4th 1359 (1995) ................................................................... 12

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432, 119 S.Ct. 755 (1999) ......................................................... 3

*IBP, Inc. v. Alvarez*,
    546 U.S. 21, 126 S. Ct. 514 (2005) ......................................................................... 17

*In re Indian Gaming Related Cases v. California*,
    147 F.Supp.2d 1011 (N.D.Cal.2001) *aff'd*, 331 F.3d 1094 (9th Cir. 2003) ............................. 8

*K-Mart Corp. v. NLRB*,
    626 F.2d 704 (9th Cir. 1980).................................................................................... 7

*Kentucky Div., Horsemen's Benev. & Protective Ass'n v. Turfway Park Racing Ass'n*,
    20 F.3d 1406 (6th Cir. 1994) ................................................................................ 11

*Lozano Enterprises v. NLRB*,
    327 F.2d 814 (9th Cir. 1964).................................................................................... 7

*Mashantucket Pequot Tribe v. State of Conn.*,
    913 F.2d 1024 (2d Cir. 1990) ........................................................................... 8, 15

*Montana v. Blackfeet Tribe*,
    471 U.S. 759, 105 S. Ct. 2399 (1988) ....................................................................... 4

*Moreland v. Dep't of Corporations*,
    194 Cal. App. 3d 506 (1987)..................................................................................... 5

*National Mgmt. Consultants, Inc.*,
    313 NLRB 405 (1993) .......................................................................................... 14

*New York v. United States*,
    505 U.S. 144, 112 S. Ct. 2408 (1992) ..................................................................... 11

*NLRB v. Indus. Wire Prods. Corp.*,
    455 F.2d 673 (9th Cir. 1972).................................................................................... 7

*NLRB v. Mayes Bros.*,
    383 F.2d 242 (5th Cir. 1967).................................................................................... 7

*NLRB v. Nat'l Shoes*,
    208 F.2d 688 (2d Cir. 1953) .................................................................................. 14

*Norris, a Dover Res. Co. v. N.L.R.B.*,
    417 F.3d 1161 (10th Cir. 2005)............................................................................... 14

*People v. Stewart*,
    119 Cal. App. 4th 163 (2004), *as modified* (June 22, 2004) ............................................ 4, 5

*Ponca Tribe of Oklahoma v. Oklahoma*,
    37 F.3d 1422 (10th Cir. 1994) *cert. granted, judgment vacated on
    Eleventh Amendment grounds*, 517 U.S. 1129, 116 S. Ct. 1372 (1996) ................................. 11

REPLY MEM. IN SUPPORT OF TRIBE'S MOTION FOR JUDGMENT ON THE PLEADINGS

*Printz v. United States*,
    521 U.S. 898, 117 S. Ct. 2365 (1997) ............................................................... 11

*Rincon Band of Luiseno Mission Indians v. Schwarzenegger*,
    602 F.3d 1019 (9th Cir. 2010) ...................................................................... 2, 9

*Rumsey Indian Rancheria of Wintun Indians v. Wilson*,
    No. CIV-S-92-812, 1993 WL 360652 (E.D. Cal. July 20, 1993) ....................... 11

*Salt River Pima-Maricopa Indian Cmty. v. Hull*,
    945 P.2d 818 (Ariz. 1997) (en banc) .............................................................. 6, 9

*Shelby v. Bartlett*,
    391 F.3d 1061 (9th Cir. 2004) .......................................................................... 17

*Singh v. Holder*,
    591 F.3d 1190 (9th Cir. 2010) ............................................................................ 3

*Special Assembly Interim Comm. on Public Morals v. Southard*,
    90 P.2d 304 (Cal. 1939) .................................................................................... 12

*State Farm Mut. Auto. Ins. Co. v. Garamendi*,
    88 P.3d 71 (Cal. 2004), *as modified* (June 9, 2004) ......................................... 5

*Teachers Ins. & Annuity Ass'n of Am. (TIAA) v. Tribune Co.*,
    670 F. Supp. 491 (S.D.N.Y. 1987) ...................................................................... 8

*United States Term Limits, Inc. v. Thornton*,
    514 U.S. 779, 115 S. Ct. 1842 (1995) ............................................................... 10

*United States v. Spokane Tribe of Indians*,
    139 F.3d 1297 (9th Cir. 1998) ....................................................................... 2, 15

*Warren v. United States*,
    859 F. Supp. 2d 522 (W.D.N.Y. 2012)
    *aff'd on other grounds*, 517 F. App'x 54 (2d Cir. 2013) ................................... 12

*Wisconsin Winnebago Nation v. Thompson*,
    22 F.3d 719 (7th Cir. 1994) .............................................................................. 15

*Yavapai-Prescott Indian Tribe v. Arizona*,
    796 F. Supp. 1292 (D. Ariz. 1992) .................................................................... 12

*Zumbrun Law Firm v. California Legislature*,
    165 Cal.App.4th 1603 (2008) ........................................................................... 12

**Statutes**

25 U.S.C. § 2710(d)(1)(B) ...................................................................................... 11

REPLY MEM. IN SUPPORT OF TRIBE'S MOTION FOR JUDGMENT ON THE PLEADINGS

25 U.S.C. § 2710(d)(1)(C) ........................................................................................................ 7

25 U.S.C. § 2710(d)(3)(A) ................................................................................................... 1, 3, 7

25 U.S.C. § 2710(d)(7)(B)(ii) ................................................................................................. 3, 7

25 U.S.C. § 2710(d)(7) ............................................................................................ 8, 12, 15, 16

25 U.S.C. § 2710(d)(7)(A)(i) .............................................................................................. 3, 5, 7

25 U.S.C. § 2710(d)(7)(B) ................................................................................................. 14, 15

25 U.S.C. § 2710(d)(7)(B)(iii) ................................................................................................. 13

25 U.S.C. § 2710(d)(7)(B)(iii)-(vii) ......................................................................................... 17

25 U.S.C. § 2710(d)(7)(B)(iv) ................................................................................................... 3

25 U.S.C. § 2710(d)(7)(B)(iv)-(vii) ......................................................................................... 15

25 U.S.C. § 2710(d)(7)(B)(vii) ................................................................................................. 8

25 U.S.C. § 2710(d)(8) ............................................................................................................. 9

25 U.S.C. § 2719(b)(1)(A) ........................................................................................................ 3

29 U.S.C. § 158(a)(5) ............................................................................................................. 14

Cal. Gov't Code § 98005 ................................................................................................. 4, 16, 17

U.S. Const. amend. X .......................................................................................................... 9, 11

Cal. Const. art. IV § 19(f) ................................................................................................... 6, 11

**Other Authorities**

Gaming on Trust Lands Acquired After Oct. 17, 1988,
      73 Fed. Reg. 29,354 (May 20, 2008) ................................................................................. 4

S. Rep. No. 100-446 (1988), *reprinted in* 1988 U.S.C.C.A.N. 3071 ..................................... 10, 12

REPLY MEM. IN SUPPORT OF TRIBE'S MOTION FOR JUDGMENT ON THE PLEADINGS

# INTRODUCTION[1]

The State fundamentally misconstrues IGRA's good-faith mandate.  IGRA imposes the obligation to negotiate in good faith on the State as a whole, not individual officials or bodies within state government.  And it obligates the State to work toward *an enforceable agreement*— i.e., with "the purpose of entering into a Tribal-State compact governing the conduct of gaming activities," 25 U.S.C. § 2710(d)(3)(A)—not simply to negotiate for its own sake.  That California has chosen to bifurcate the manner in which it complies with that obligation by assigning separate responsibilities to the Governor and Legislature as a matter of state law does not alter the State's obligations under federal law, under which the State is treated as a unitary entity.  The State's attempt to distinguish between the *negotiation* of a compact by the Governor and the *ratification* of a compact by the Legislature—as though the latter were exempt from federal law—cannot be squared with IGRA, which draws no such distinction.

The absurdity of the State's position is reflected in its contention that the Tribe's suit is "premature," and that the Tribe should, "once again, request that the State enter into negotiations for a tribal-state class III gaming compact" (State Br. 9).  That is an empty gesture.  If the Court were to accept the State's view—that IGRA's obligations run only to the Governor, and that the Legislature's failure to act on a negotiated agreement is not actionable—then the Tribe would once again find itself in the same situation it is in now, as the State has offered no reason to believe that the Legislature would act any differently than it did before.  IGRA does not permit States to derail a tribe's access to class III gaming under federal law by forcing tribes into an endless process over which the State exercises complete and unreviewable control.  To the contrary, IGRA's remedial scheme provides tribes with a way to overcome state recalcitrance (at any level of state government) through the type of suit that Enterprise has brought here.

The State offers no substantive or factual defense of the Legislature's conduct.  Indeed, it admits (State Br. 7) that "it is true that the Legislature took no action to ratify the compact and it

---

[1] Pursuant to the Court's March 5, 2015 Order (Dkt. 18), the Estom Yumeka Maidu Tribe of the Enterprise Rancheria (the "Tribe") will respond separately to the Amicus Curiae Brief of the California State Legislature (Dkt. 15-1).

1  eventually expired by its own terms," and that the essential facts of this case are undisputed.

2  Having waived its sovereign immunity from this type of suit, the State—not the Tribe—must bear

3  the consequences of the Legislature's inaction.  The Tribe is entitled to judgment in its favor.

**ARGUMENT**

4

5  I.  **IGRA'S DUTY OF GOOD FAITH NEGOTIATION APPLIES TO THE STATE AS A WHOLE AND ENCOMPASSES EVERY ASPECT OF THE COMPACTING PROCESS**

6

7  The Ninth Circuit has made clear that "IGRA … was not designed to give States complete

8  power over tribal gaming."  *Rincon Band of Luiseno Mission Indians v. Schwarzenegger*, 602 F.3d

9  1019, 1030 (9th Cir. 2010).  Rather, "[i]n IGRA, Congress took from the tribes collectively

10  whatever sovereign rights they might have had to engage in unregulated gaming activities, but

11  *imposed on the states the obligation to work with tribes to reach an agreement* under the terms of

12  IGRA permitting the tribes to engage in lawful class III gaming activities." *Id.* at 1030 (emphasis

13  added).  "To guard against the possibility that states might choose not to negotiate, or to negotiate

14  in bad faith, Congress included a complex set of procedures designed to protect tribes from

15  recalcitrant states."  *United States v. Spokane Tribe of Indians*, 139 F.3d 1297, 1299 (9th Cir.

16  1998)

17  The careful scheme that Congress enacted has several important features to ensure that

18  States cannot use the compacting process to block politically disadvantaged tribes from realizing

19  the benefits that Congress intended to confer through IGRA.  *First*, the duty to negotiate in good

20  faith applies to "the State" as a whole, not to individual officials or bodies within state

21  government—regardless of how States arrange their internal affairs.  *Second*, the duty applies to

22  every step of the compacting process necessary to "enter into" a legally enforceable agreement,

23  drawing no distinction between the negotiation of a compact and its ratification (or, for that

24  matter, any other step that a State might introduce into its own compacting process).  *Third*, where

25  a State fails to comply with IGRA's mandate, IGRA provides a remedy:  federal courts may

26  intercede after 180 days, ordering the parties back to the bargaining table or mediation, failing

27

28

REPLY MEM. IN SUPPORT OF TRIBE'S MOTION FOR JUDGMENT ON THE PLEADINGS

which the Secretary of the Interior may prescribe the terms on which a tribe may conduct class III

gaming in the absence of a negotiated compact.

### A.      The State As A Whole Has An Obligation To Negotiate Toward An Enforceable Agreement

IGRA expressly imposes on *States* the obligation to negotiate in good faith to enter into

gaming compacts with tribes.  *E.g.*, 25 U.S.C. § 2710(d)(3)(A) ("[T]he *State* shall negotiate with

the Indian tribe in good faith to enter into such a compact.") (emphasis added).[2]  Because the duty

to negotiate applies to "the State" as a unitary body, the Legislature is bound to the same extent as

the Governor.  The plain text of the statute compels the conclusion that IGRA's obligations extend

to the State as a whole.  *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438, 119 S.Ct. 755, 760

(1999) ("As in any case of statutory construction, our analysis begins with 'the language of the

statute.'  And where the statutory language provides a clear answer, it ends there as well.")

(citation omitted).

In drafting IGRA, Congress knew how to impose obligations or confer authority on a

single branch of state government, when it wished to do so.  *Singh v. Holder*, 591 F.3d 1190, 1195

(9th Cir. 2010) ("[W]here Congress includes particular language in one section of the statute but

omits it in another section of the same Act, Congress acts intentionally and purposely in the

disparate inclusion or exclusion.") (alteration and internal quotation marks omitted).  In the section

of IGRA governing gaming on Indian lands acquired after the statute's enactment, Congress gave

governors—not States as a whole, or any other officials or bodies within state government—the

option, in certain circumstances, to concur or decline to concur in the Secretary of the Interior's

determination that such gaming should be permitted.  *See* 25 U.S.C. § 2719(b)(1)(A) (permitting

---

[2] *See also* 25 U.S.C. § 2710(d)(7)(A)(i) (tribe may bring suit arising from "the failure of a State to enter into negotiations with the Indian tribe for the purpose of entering into a Tribal-State compact under paragraph (3) or to conduct such negotiations in good faith"); *id.* § 2710(d)(7)(B)(ii) ("[T]he burden of proof shall be upon the State to prove that the State has negotiated with the Indian tribe in good faith to conclude a Tribal-State compact."); *id.* § 2710(d)(7)(B)(iv) (if mediation is ordered, "the Indian tribe and the State shall each submit to a mediator appointed by the court a proposed compact that represents their last best offer for a compact").

1  gaming on newly acquired Indian land where the Secretary of the Interior determines that gaming

2  is in the best interest of the tribe and not detrimental to the surrounding community, "but only if

3  **the Governor of the State** in which the gaming activity is to be conducted concurs in the

4  Secretary's determination") (emphasis added); *see also* 73 Fed. Reg. 29,354, 29,371 (rejecting

5  recommendation that state legislature must also concur in decision, "because IGRA specifically

6  identifies the Governor and not the State; this provision is distinguished from other sections of

7  IGRA that specifically mention the State").  The State's contrary position is foreclosed by basic

8  principles of statutory construction, but even if there were any doubt, such doubt must be resolved

9  in favor of the Tribe.  *See generally Montana v. Blackfeet Tribe*, 471 U.S. 759, 766, 105 S. Ct.

10  2399, 2403 (1988) ("[S]tatutes are to be construed liberally in favor of the Indians, with

11  ambiguous provisions interpreted to their benefit.").

12  California has implicitly recognized the breadth of IGRA's obligation in its own

13  Government Code, which distinguishes between "the Governor" and "the state" in waiving the

14  State's sovereign immunity to suits arising under IGRA's remedial provision.  Section 98005 of

15  the Government Code begins by addressing the consequences of **the Governor's** refusal to execute

16  the model Tribal-State compact set forth at Section 98004 and concludes by submitting "the State

17  of California" to suits arising from **the State's** refusal to negotiate or failure to negotiate in good

18  faith with a tribe to enter into an alternative compact:

19      The Gaming Compact offered in Section 98004 shall, to the extent permitted by
         law, be deemed agreed to, approved, and executed by the State of California in
20      the event a request therefor is duly made by a federally recognized Indian tribe in
         accordance with Section 98002 and it is not **executed by the Governor** within the
21      time prescribed in this chapter … Without limiting the foregoing, the State of
         California … submits to the jurisdiction of the courts of the United States in any
22      action brought against the state by any federally recognized California Indian
         tribe asserting any cause of action arising from **the state's refusal to enter into**
23      **negotiations with that tribe for the purpose of entering into a different Tribal-**
         **State compact pursuant to IGRA or to conduct those negotiations in good**
24      **faith**[.]

25  Cal. Gov't Code § 98005 (emphasis added).

26  Had California understood IGRA's obligations to encompass only the Governor's

27  actions, it would have tailored its immunity to suits arising from "the Governor's"

28

- 4 -

conduct rather than that of "the state" as a whole.  *People v. Stewart*, 119 Cal. App. 4th 163, 171 (2004), *as modified* (June 22, 2004) ("Where the same word or phrase might have been used in the same connection in different portions of a statute but a different word or phrase having different meaning is used instead, the construction employing that different meaning is to be favored."); *id*. at 172 ("[W]e must assume that the Legislature knew the difference between [the two statutory terms] and meant what it said.").  Instead, Section 98005 employs language that tracks the language of IGRA creating the cause of action at issue here, 25 U.S.C. § 2710(d)(7)(A)(i) (granting federal courts jurisdiction over "any cause of action initiated by an Indian tribe arising from *the failure of a State to enter into negotiations with the Indian tribe for the purpose of entering into a Tribal-State compact … or to conduct such negotiations in good faith*") (emphasis added).  The State provides no reason why Section 98005 should not be read in parallel with IGRA, or why the understanding of the State's obligations reflected in Section 98005 should not apply in this litigation.  *See Moreland v. Dep't of Corporations*, 194 Cal. App. 3d 506, 512 (1987) ("[I]t is a basic premise of statutory construction that when a state law is patterned after a federal law, the two are construed together."); *see also State Farm Mut. Auto. Ins. Co. v. Garamendi*, 88 P.3d 71, 78 (Cal. 2004), *as modified* (June 9, 2004) ("[W]e read every statute with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.") (internal quotation marks omitted).  Both statutes are directed at "the State" as a whole, drawing no distinction among the different branches of state government.  The State's contrary reading is unsustainable under basic principles of statutory construction.

The State's contrary reading of IGRA is also inconsistent with the California Supreme Court's understanding of the obligations that statute imposes on the State.  In *Hotel Employees & Restaurant Employees Intl. Union v. Davis*, 981 P.2d 990 (1999), the court explained that "[a]s part of its framework for negotiating class III gaming compacts, IGRA provides for a tribal action in United States District Court against *a state that has*

1   *refused to negotiate* for a compact or has failed to do so in good faith." *Id.* at 1011

2   (emphasis added).  The decision arose from a constitutional challenge to Section 98005,

3   which the court rejected on multiple grounds, including that subjecting the State to suit

4   for violating IGRA's good-faith mandate provides a means to "effectuate and expedite

5   IGRA's process for achieving class III Indian gaming compacts." *Id.*  The California

6   Supreme Court understood that IGRA obligates the State itself, not just the Governor,

7   and requires the State to face the consequences in federal court where it fails to fulfill its

8   federal obligations.

9        The Arizona Supreme Court has also recognized the breadth of IGRA's mandate.  In *Salt*

10  *River Pima-Maricopa Indian Cmty. v. Hull*, 945 P.2d 818 (Ariz. 1997) (en banc), it held that the

11  duty to negotiate in good faith runs to the State as a whole, not just the governor, even though

12  Arizona statutory law gave the governor exclusive authority over the compacting process.  *Id.* at

13  822 ("IGRA confers no powers or privileges on the governor as such.  The federal statute requires

14  … that 'the *State* shall negotiate[.]'"); *id.* at 823 ("'[G]overnor' is not a synonym for 'state.'").  To

15  be sure, Arizona's means for complying with IGRA's good-faith negotiation requirement differs

16  from California's, but the salient point is the same:  The obligation runs to the State as a whole, no

17  matter how States arrange their internal affairs.

18       **B.**   **The Duty To Negotiate In Good Faith Encompasses Every Step Of The**
            **Compacting Process Necessary To Enter Into An Enforceable Agreement**
19

20       The State's position rests on an untenable distinction between the *negotiation* of a compact

21  and its *ratification*; the State contends that the latter is outside the scope of IGRA's mandate.

22  Thus, in the State's view:  "While it is true that the Legislature took no action to ratify the

23  compact and it eventually expired by its own terms in July 2014 (Complaint, ¶ 47), that is not

24  evidence of bad faith within the meaning of IGRA because it took place after the State, acting

25  through the Governor, had discharged its duty to negotiate in good faith."  State Br. 7.  In other

26  words, the State asserts that the Legislature is free under California law (Cal. Const. art. IV

27  § 19(f)) to nullify a compact negotiated and agreed to by the Governor simply by refusing to act

28

- 6 -

on it—and that it may do so indefinitely without consequence under IGRA.  But that would render IGRA's good-faith mandate toothless:  Any State could simply add an extra (non-negotiable, non-reviewable) step following the "negotiation" of a compact that would permit States unilaterally to block tribes from exercising their federal gaming rights under IGRA.

IGRA does not require negotiation for its own sake—rather, States must negotiate "to enter[] into a Tribal-State compact governing the conduct of gaming activities," "for the purpose of entering into a Tribal-State compact," and "to conclude a Tribal-State compact."  25 U.S.C. § 2710(d)(3)(A), (d)(7)(A)(i), (d)(7)(B)(ii); *see also id*. § 2710(d)(1)(C) (class III gaming activities lawful only if "conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State").  That statutory language codifies the bedrock principle that parties subject to a duty of good-faith negotiation must work toward *a legally enforceable agreement*, taking the steps necessary to give it legal and practical effect once a substantive agreement has been reached.  *See, e.g., H.J. Heinz Co. v. NLRB*, 311 U.S. 514, 525-26, 61 S. Ct. 320, 325-26 (holding that a refusal to sign a negotiated agreement constituted a failure to bargain in good faith); *NLRB v. Indus. Wire Prods. Corp.*, 455 F.2d 673, 676-79 (9th Cir. 1972) ("Neither can this court permit negotiators charged with the ultimate responsibility of approving or rejecting collective bargaining agreements to remain mute in the presence of a negotiated accord and to later let them catch their tongues at a moment they deem most likely to frustrate the progress that has been made."); *Lozano Enterprises v. NLRB*, 327 F.2d 814, 819 (9th Cir. 1964) ("Obviously, here, 'signing' must be taken to mean an effective signing, rather than the undelivered execution which actually took place."); *NLRB v. Mayes Bros.*, 383 F.2d 242, 246 (5th Cir. 1967) (a ratifier's "failure either to sign the agreement or to advise [its counterparty] why it would not sign is inconsistent with any sincere intention to compose differences without unnecessary delay and therefore is not good faith bargaining").  Without the cooperation of the Legislature, the State is just "going through the motions of negotiating, without any real intent to reach an agreement"—a course of action which amounts to impermissible "surface bargaining."  *K-Mart Corp. v. NLRB*, 626 F.2d 704, 706 (9th Cir. 1980).

REPLY MEM. IN SUPPORT OF TRIBE'S MOTION FOR JUDGMENT ON THE PLEADINGS

As the Supreme Court explained in *Heinz*:  "A business man who entered into negotiations with another for an agreement having numerous provisions, with the reservation that he would not reduce it to writing or sign it, could hardly be thought to have bargained in good faith."  311 U.S. at 525-26, 61 S. Ct. at 325-26.  The State fails even to cite (let alone distinguish) this seminal case or acknowledge this bedrock principle.  The obvious reason is that the State has no response: Viewed objectively, the State has not endeavored to enter into a legally enforceable agreement with the Tribe; rather, the Legislature has let the compact negotiated by the Governor languish until it expired by its own terms.  While the State asserts that the cases cited by the Tribe construing the NLRA's duty of good faith are "inapt" (State Br. 5),[3] nothing about this principle is labor-law specific—reaching a legally enforceable agreement must be the purpose of any good-faith negotiation.  Indeed, the same principle has been recognized in the corporate-transactional context, where a party cannot escape a preliminary commitment to agree by refusing to take further action.  *See Teachers Ins. & Annuity Ass'n of Am. (TIAA) v. Tribune Co.*, 670 F. Supp. 491, 503, 505 (S.D.N.Y. 1987) (preliminary commitment agreement subject to further negotiations and approvals did not permit "one party to kill the deal simply by refusing to negotiate or to sign the contract documents," or by "having its Board do nothing").[4]

---

[3] The State cites no authority for this assertion.  As explained in the Tribe's opening brief (Dkt. 14-1 at 9-10), courts routinely look to NLRA case law to define the contours of the duty to negotiate in good faith under IGRA.  *See, e.g.*, *In re Indian Gaming Related Cases v. California*, 147 F. Supp. 2d 1011, 1020–21 (N.D. Cal. 2001) ("The Court looks for guidance to case law interpreting the National Labor Relations Act," which, like IGRA "does not expressly define 'good faith,'" though without intending a "wholesale" incorporation of the NLRA cases) *aff'd*, 331 F.3d 1094 (9th Cir. 2003); *Flandreau Santee Sioux Tribe v. S. Dakota*, No. CIV. 07-4040, 2011 WL 2551379, at *3 (D.S.D. June 27, 2011) ("The meaning of good faith negotiations in the area of labor law has been well-developed over the course of many years, and it is a helpful model for developing the meaning of good faith negotiations under the IGRA."); *Mashantucket Pequot Tribe v. State of Conn.*, 913 F.2d 1024, 1032 (2d Cir. 1990) (citing NLRA case law).

[4] The State's observation (State Br. 8) that "IGRA does not guarantee a tribe a class III gaming compact" is misplaced.  While it is true that IGRA does not guarantee a tribe a class III gaming compact, IGRA does guarantee a tribe the ability to conduct class III gaming where a state fails to negotiate in good faith and refuses to enter into a compact.  *See* 25 U.S.C. § 2710(d)(7)(B)(vii).  IGRA thus embodies an even stronger directive to reach a negotiated agreement than the NLRA: whereas IGRA's remedial scheme encompasses court-ordered negotiations, mandatory mediation and the possibility of Secretarial gaming procedures imposed unilaterally on a recalcitrant state, 25 U.S.C. § 2710(d)(7), the remedy for a refusal to bargain under the NLRA is generally limited to an order that the employer cease and desist from unfair labor practices and restart negotiations.  *See*

---

- 8 -

1    To satisfy the good faith obligation, therefore, the State as a whole must endeavor to

2   conclude and enter into a compact with a tribe so that it may be submitted to the Secretary of the

3   Interior for approval and go into effect under 25 U.S.C. § 2710(d)(8).  While Congress did not

4   affirmatively require States to adopt a unified compacting process (like the one at issue in *Salt*

5   *River Pima-Maricopa Indian Cmty.*, 945 P.2d 818, in which Arizona's Governor has sole

6   compacting authority), IGRA cannot be applied in a manner that diminishes the federal rights of

7   tribes in States like California that choose to distribute compacting authority among multiple

8   branches of government. *See Rincon*, 602 F.3d at 1027 ("In passing IGRA, Congress assured

9   tribes that the statute would always be construed in their best interests.").

10   **C.    State Sovereignty And Law Provide No Basis To Excuse The Legislature From
            Its Good Faith Negotiation Obligation**

11

12    The State relies principally on one fact to differentiate Indian gaming negotiations from

13   other good faith bargaining contexts—the State's status as a sovereign entity (State Br. 6).  But

14   that distinction makes no difference given that States are exercising not their own inherent powers,

15   but authority delegated to them by the federal government, when engaged in IGRA's compacting

16   process.  By its own terms, the Tenth Amendment applies only to powers "reserved to the states,"

17   not powers "delegated to the United States by the Constitution."  U.S. Const. amend. X; *see*

18   *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 549, 105 S. Ct. 1005, 1017

19   (1985) (explaining that States retain sovereign authority "only to the extent that the Constitution

20   has not divested them of their original powers and transferred those powers to the Federal

21   Government").  As explained in the Tribe's opening brief (Dkt. 14-1 at 2-3), States have no

22   inherent authority to regulate tribal gaming on Indian lands.  *See generally California v. Cabazon*

23   *Band of Mission Indians*, 480 U.S. 202, 207, 222, 107 S. Ct. 1083, 1087, 1095 (1987).[5]  Their only

24   ────────────────────

25   *H. K. Porter Co. v. NLRB*, 397 U.S. 99, 108, 90 S. Ct. 821, 826 (1970) (holding that the NLRA
     only authorizes "governmental supervision of the procedure" and does not permit the National
     Labor Relations Board to compel agreement); *see generally* NLRB Casehandling Manual, Part 3,
26   Compliance Proceedings, § 10528.1 (Nov. 2013).

27   [5] *See also Confederated Tribes of Siletz Indians of Oregon v. United States*, 110 F.3d 688, 694
     (9th Cir. 1997) ("Congress enacted IGRA pursuant to its powers under the Indian Commerce

28

REPLY MEM. IN SUPPORT OF TRIBE'S MOTION FOR JUDGMENT ON THE PLEADINGS

authority derives from IGRA, which allows States to play a limited role in regulating tribal gaming via the negotiation and execution of Tribal-State compacts.  *See* S. Rep. No. 446, 100th Cong., 2d Sess. 5-6 (1988), reprinted in 1988 U.S.C.C.A.N. 3071, 3076.  Because the State's powers under IGRA "derive not from the reserved powers of state sovereignty, but rather from the delegated powers of national sovereignty," IGRA does not raise Tenth Amendment concerns.  *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 805, 115 S. Ct. 1842, 1856 (1995) (holding that States have no power to set qualifications for membership in Congress, despite constitutional delegation of power to set the time, place, and manner of congressional elections).

The State nevertheless argues (State Br. 6) that subjecting the state legislative process to IGRA would "invade a fundamental aspect of the State's sovereignty and would be inconsistent with Congress's assumed intent to comply with the Tenth Amendment."  California has made similar arguments in the past, and the Ninth Circuit has squarely rejected them.  In particular, in *Biggs v. Wilson*, 1 F.3d 1537 (9th Cir. 1993), the California Department of Transportation withheld paychecks from transportation workers until a state budget had been approved by the Legislature and signed by the Governor, as required by state law, and a class of highway workers challenged the withholding under the federal Fair Labor Standards Act.  *Id.* at 1538.  In defense, California argued that applying the FLSA to the State "would require California to pass a budget on time, a … serious infringement on state sovereignty."  *Id.* at 1543.  The Ninth Circuit rejected the State's Tenth Amendment argument and affirmed the State's liability under federal law:

> To the extent compliance with the FLSA interferes with the state budgetary process, that interference is caused by state law, not federal law.  The FLSA does not require California to pass a budget on time; it only requires California to do what all employers must do—pay its employees the minimum wage on payday.  That California has made its federal obligation dependent upon the operation of state law does not render the federal law unconstitutional.

*Id.* Here, any conflicts between IGRA's good-faith negotiation obligation and the legislative process were created by the State, which adopted a bifurcated compacting process under

_____

Clause of the United States Constitution.  'The central function of the Indian Commerce Clause is to provide Congress with the plenary power to legislate in the field of Indian affairs.'") (citations omitted).

- 10 -

1  California Constitution Article 4, § 19(f), more than a decade after IGRA was enacted.  Although

2  IGRA allows States to determine their internal processes for approval of gaming compacts, it does

3  not allow those procedures to undermine its text and purpose.

4       And although the State chooses to ignore them, numerous cases have held that IGRA's

5  compacting process does not impinge impermissibly on state sovereignty or Tenth Amendment

6  interests.  The State (State Br. 6) cites *Printz v. United States*, 521 U.S. 898, 925, 117 S. Ct. 2365

7  (1997) for the proposition that "the Federal Government may not compel the States to implement,

8  by legislation or executive action, federal regulatory programs."  But IGRA's compacting

9  requirement does not compel the State to implement a federal program.  Indeed, the requirement

10 applies only to those States that choose to permit class III gaming in the first place—a State that

11 prohibits such gaming within its borders is under no duty to negotiate.  *See* 25 U.S.C.

12 § 2710(d)(1)(B); *cf. Kentucky Div., Horsemen's Benev. & Protective Ass'n v. Turfway Park*

13 *Racing Ass'n*, 20 F.3d 1406, 1416 (6th Cir. 1994) (holding that federal law conditioning interstate

14 off-track betting on State approval of requests to engaging in off-track betting did not compel the

15 State to act in violation of the Tenth Amendment).  Moreover, a State that permits such gaming

16 need not negotiate either; it may refuse to do so, thereby clearing the way for tribes to conduct

17 gaming on terms established by the Secretary of the Interior, without the State's involvement.

18 Because giving States such an incentive to regulate is entirely permissible, *New York v. United*

19 *States*, 505 U.S. 144, 188, 112 S. Ct. 2408, 2435 (1992), IGRA has repeatedly withstood Tenth

20 Amendment challenges.  *See Rumsey Indian Rancheria of Wintun Indians v. Wilson,* No. CIV-S-

21 92-812, 1993 WL 360652, at *12 (E.D. Cal. July 20, 1993) (rejecting Tenth Amendment

22 challenge to IGRA because IGRA does not coerce States to regulate, but "offers the State an

23 opportunity to influence federal regulation of Indian gaming which it would not otherwise have,"

24 provided "the State exercise that influence through the compact negotiating process"); *Ponca*

25 *Tribe of Oklahoma v. Oklahoma*, 37 F.3d 1422, 1434-36 (10th Cir. 1994) *cert. granted, judgment*

26 *vacated on Eleventh Amendment grounds*, 517 U.S. 1129, 116 S. Ct. 1372 (1996); *Cheyenne River*

27

28

**REPLY MEM. IN SUPPORT OF TRIBE'S MOTION FOR JUDGMENT ON THE PLEADINGS**

1  *Sioux Tribe v. State of S.D.*, 3 F.3d 273, 281 (8th Cir. 1993); *Dalton v. Pataki*, 835 N.E.2d 1180,

2  1190 (N.Y. 2005).[6]

3         In any event, the State's contention (State Br. 6-7) that the Legislature's role is strictly

4  limited to reviewing and ratifying compacts—and that the Legislature is powerless to

5  communicate its views or counterproposals to the Governor or the Tribe—is inconsistent with

6  background principles of California law.  The Legislature does not require an affirmative

7  authorization under state law to undertake such actions.  Instead, in its constitutional role as "the

8  entire law-making authority of the state," the Legislature has the ability to "exercise any and all

9  legislative powers which are not expressly or by necessary implication denied to it by the

10  Constitution."  *Howard Jarvis Taxpayers' Assn. v. Fresno Metro. Projects Auth.*, 40 Cal. App. 4th

11  1359, 1374 (1995).[7]  Thus, the Legislature's ratification power includes the implied powers

12  necessary to comply with the State's federal good-faith obligations.  *See, e.g., Special Assembly*

13  *Interim Comm. on Public Morals v. Southard*, 90 P.2d 304, 308 (Cal. 1939); *Zumbrun Law Firm*

14  *v. California Legislature*, 165 Cal.App.4th 1603, 1614 (2008).  The Court need not resolve this

15  question of California law to resolve the federal question before it, however.  Even assuming that

16  California law prohibits its Legislature from fulfilling California's duty of good-faith negotiation,

17  the Tribe would still be entitled to a remedy under IGRA's 25 U.S.C. § 2710(d)(7).  Similarly, in

18  *Biggs*, the Ninth Circuit simply assumed that the State was correct that it could not comply with

19

20  _____

21  [6] *See also Warren v. United States*, 859 F. Supp. 2d 522, 533 (W.D.N.Y. 2012) *aff'd on other grounds*, 517 F. App'x 54 (2d Cir. 2013); *Yavapai-Prescott Indian Tribe v. Arizona*, 796 F. Supp.

22  1292, 1297 (D. Ariz. 1992); S. Rep. No. 100-446, 14, *reprinted in* 1988 U.S.C.C.A.N. 3071, 3084 ("States are not required to forgo any State governmental rights to engage in or regulate class III

23  gaming except whatever they may voluntarily cede to a tribe under a compact.").

24  [7] One example of an inherent legislative power is the power to make interstate agreements and compacts.  *See* 1A Sutherland Statutory Construction § 32:3 (7th ed.) ("State constitutions,

25  furthermore, are generally silent on the subject of interstate compacts."); *see also*

26  *Gillette Co. v. Franchise Tax Bd.*, 209 Cal. App. 4th 938, (2012) ("Thus interstate compacts are unique in that they empower one state legislature—namely the one that enacted the agreement—to

27  bind all future legislatures to certain principles governing the subject matter of the compact.") *review pending*, 291 P.3d 327 (Cal. 2013).

28

1  the FLSA without violating state law—declining to resolve the state-law issue, but holding the

2  State liable for its federal noncompliance.  1 F.3d at 1543.

3  **II.      THE STATE HAS FAILED TO NEGOTIATE IN GOOD FAITH**

4          The State offers no substantive or factual defense of the Legislature's conduct on the

5  merits—nowhere does it argue that the Legislature *negotiated in good faith* or otherwise

6  endeavored to enter into an enforceable agreement between the Tribe and the State.  Rather, its

7  position rests entirely on the argument that IGRA does not reach the Legislature's ratification

8  process.  If the Court concludes (as the Tribe submits it must) that IGRA's good-faith obligations

9  apply to the State as a whole and encompass each step of the compacting process necessary to

10  enter into an enforceable agreement, then it follows that the Tribe is entitled to judgment in its

11  favor that "the State has failed to negotiate in good faith with [the Tribe] to conclude a Tribal-

12  State compact governing the conduct of gaming activities," 25 U.S.C. § 2710(d)(7)(B)(iii).

13          The key facts of this case are undisputed.  The Tribe and the Governor executed a compact

14  on August 30, 2012.  Compl. ¶ 48; Answer ¶ 48.  The Governor's Office transmitted the compact

15  to the Legislature, but the Legislature never held a vote on it.  Compl ¶¶ 49-50; Answer ¶¶ 49-50.

16  Nor did the Legislature ever convey, formally or informally, new terms or issues for the Governor

17  and Tribe to address in negotiation.  Answer ¶¶ 51-52.  The State admits that "no further

18  negotiation of the terms of the Enterprise Compact has occurred since the Enterprise Compact was

19  transmitted to the California State Legislature" in late 2012.  *Id.*  ¶ 61.  Thus, the State broadly

20  admits (State Br. 7) that "it is true that the Legislature took no action to ratify the compact."

21          As discussed *supra*, the essential attribute of good-faith negotiations is that the parties

22  work toward a legally enforceable agreement.  *H.J. Heinz*, 311 U.S. at 525-26, 61 S. Ct. at 325-26.

23  But rather than address that bedrock principle, the State instead focuses its briefing (State Br. 5-7)

24  on other attributes of good-faith negotiation that the Tribe identified in its opening brief—i.e., that

25  a party must not unreasonably delay action, withhold approval without offering counterproposals

26  to address its concerns, or refuse even to communicate its concerns so they may be addressed

27  during the negotiations—contending that they are "inapplicable to the present circumstances"

28

- 13 -

(State Br. 4).  But these other attributes are obvious indicia of a party's bona fides:  A party that refuses to take any action to approve a negotiated agreement for nearly two years (letting it expire by its own terms) and makes no effort to communicate its concerns or offer counterproposals can hardly be thought to be engaged in a sincere effort to "enter into" or "conclude" an enforceable agreement.  The Legislature's intransigence is simply incompatible with a duty to negotiate in good faith.  *See, e.g.*, *Norris, a Dover Res. Co. v. N.L.R.B.*, 417 F.3d 1161, 1170 (10th Cir. 2005) (An "employer 'is obliged to make some reasonable effort in some direction to compose his differences with the union, if § 8(a)(5) is to be read as imposing any substantial obligation at all.'"); *Nat'l Mgmt. Consultants, Inc.*, 313 NLRB 405, 408 (1993) (finding that company had failed to negotiate in good faith where it "offered no reasons, offered no counterproposals, and made no attempt to schedule any meetings to discuss the matter" with the union).[8]

In addition, the duration of the Legislature's inaction in this case goes beyond any period of delay that might be consistent with good-faith bargaining.  *See, e.g., NLRB v. Nat'l Shoes*, 208 F.2d 688, 692 (2d Cir. 1953) (excessive delay in communicating terms and failure to ratify previously bargained-for terms demonstrated a lack of good-faith bargaining); *Cont'l Ins. Co. v. NLRB*, 495 F.2d 44, 48 (2d Cir. 1974) (company had not bargained in good faith where it had "pursued a pattern of tactics designed to delay the negotiations as long as possible").  The State's delay also extends far beyond the 180 days prescribed by IGRA before a tribe may seek a judicial remedy under 25 U.S.C. § 2710(d)(7)(B).  Even if the failure to conclude a compact within 180 days is not a *per se* violation of the duty to negotiate in good faith, IGRA plainly contemplates that

---

[8] Contrary to the State's assertion (State Br. 7 n.6), the language quoted above from *National Management* appears in the cited case, at page 408 of volume 313 of the NLRB reporter.  The National Labor Relations Board adopted and modified the Administrative Law Judge's opinion, and therefore citing to the Board's opinion is more appropriate than citing to the ALJ's opinion, as the State does.  Also, although *National Management* is a labor case and thus involves the National Labor Relations Act, the counterproposal obligation arises not out of a specific statutory provision, but out of the Act's general duty to bargain in good faith—just as IGRA imposes a duty to bargain in good faith in this case.  *See Nat'l Mgmt.*, 313 NLRB at 408 (failure to offer counterproposals "demonstrates bad faith"); National Labor Relations Act § 8(a)(5), 29 U.S.C. § 158(a)(5) (an employer shall not "refuse to bargain collectively with the representatives of his employees").

REPLY MEM. IN SUPPORT OF TRIBE'S MOTION FOR JUDGMENT ON THE PLEADINGS

1   negotiations are to be completed within a reasonable time by permitting federal courts to intercede

2   180 days after the tribe first requests negotiations and prescribing 60-day deadlines for the parties

3   to complete any court-ordered negotiations or mediation before the matter is referred to the

4   Secretary of the Interior.  *See* 25 U.S.C. § 2710(d)(7)(B)(iv)-(vii); *see generally Mashantucket*

5   *Pequot Tribe v. Connecticut*, 913 F.2d 1024, 1032-33 (2d Cir. 1990).  Here, the Compact was

6   signed in August 2012, giving the Legislature nearly two years to ratify it before it expired by its

7   own terms in July 2014.  Compl. ¶¶ 47-48; Answer ¶¶ 47-48.  The Legislature's failure to act

8   within that time frame cannot be reconciled with the State's duty to negotiate in good faith.

9        California's decision to bifurcate the State's compacting authority—assigning distinct roles

10   to the Governor and the Legislature—means that the Legislature has an essential role to play in

11   fulfilling the State's obligations under IGRA.  Where, as here, the Legislature has failed to play

12   that role, the State must be held to account, and the Tribe is entitled to the remedy that federal law

13   provides.  The State, not the Tribe, must bear the consequences of the Legislature's inaction.

14   **III.   THE STATE'S PROPOSED "REMEDY" IS INCONSISTENT WITH IGRA'S
         REMEDIAL SCHEME**

15

16        The State asserts (State Br. 7-8) that the Tribe's suit is "premature" and that the appropriate

17   "remedy" for a tribe in Enterprise's situation is to simply restart the process all over again and

18   hope for a different outcome.  That is absurd—and in direct conflict with the text and purpose of

19   IGRA's remedial provision.  As the Ninth Circuit has explained:  "It is quite clear from the

20   structure of the statute that the tribe's right to sue the state is a key part of a carefully-crafted

21   scheme balancing the interests of the tribes and the states."  *Spokane Tribe of Indians*, 139 F.3d at

22   1300; *see also Wisconsin Winnebago Nation v. Thompson*, 22 F.3d 719, 724 (7th Cir. 1994)

23   ("Section 2710(d)(7) is meant to give Indian tribes a mechanism through which to force a reluctant

24   state government to the bargaining table and require it to negotiate a compact in good faith[.]").

25   Thus, under § 2710(d)(7)(B), federal courts may intercede 180 days after the tribe first requests

26   negotiations, ordering the State to the negotiating table and, failing that, to mediation, failing

27

28

REPLY MEM. IN SUPPORT OF TRIBE'S MOTION FOR JUDGMENT ON THE PLEADINGS

which the Secretary of the Interior shall prescribe the terms on which the tribe may game—

ensuring that any state interference with a tribe's federal rights will be only temporary in nature.

The State's assertion (State Br. 9) that "IGRA's statutory process has not been exhausted" is baseless. There is no statutory support for the State's position that the Tribe must try and fail *more than once* in its efforts to conclude a compact with a recalcitrant State, and there is no reason to believe that the Legislature would act any differently in the future than it has in the past. The State's position would deprive IGRA's remedial scheme of all force, inviting a never-ending cycle of fruitless negotiations, and deny tribes benefits IGRA was designed to provide them. The State's position must be rejected.

## IV.   THE TRIBE'S SUIT IS NOT BARRED BY THE STATE'S SOVEREIGN IMMUNITY

The State's argument that its sovereign immunity bars this suit (State Br. 9) is essentially a restatement of its erroneous merits argument, asking the Court to draw unwarranted distinctions between different branches of state government when both 25 U.S.C. § 2710(d)(7) and Cal. Gov't Code § 98005 treat the State as a unitary entity. This suit falls squarely within Section 98005's waiver of sovereign immunity, which states:

> [T]he State of California … submits to the jurisdiction of the courts of the United States in any action brought against the state by any federally recognized California Indian tribe asserting any cause of action *arising from the state's refusal to enter into negotiations* with that tribe for the purpose of entering into a different Tribal-State compact pursuant to IGRA *or to conduct those negotiations in good faith*, the state's refusal to enter into negotiations concerning the amendment of a Tribal-State compact to which the state is a party, or to negotiate in good faith concerning that amendment, or the state's violation of the terms of any Tribal-State compact to which the state is or may become a party.

(emphasis added). This language cannot reasonably be read to cover only those suits directed at the Governor's behavior: the multiple references to "the state" are nonsensical unless interpreted to mean the State as a whole, not individual state officials. Indeed the waiver language above begins by submitting "the State of California" as a whole to federal jurisdiction. And Section 98005 concludes with a reference to "*the state's* violation of the terms of any Tribal-State compact

*to which the state is or may become a party*," when of course only the State itself may be a "party" to a "Tribal-State Compact."

Construing "the state" to mean the State as a whole in some contexts and the Governor in others—all within the very same sentence—would fly in the face of the most basic principles of statutory construction. *See, e.g.*, *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34, 126 S. Ct. 514, 523 (2005) (identical words in the same statute are generally presumed to have the same meaning); *Shelby v. Bartlett*, 391 F.3d 1061, 1064 (9th Cir. 2004) ("We must presume that words used more than once in the same statute have the same meaning."); *Delaney v. Baker*, 971 P.2d 986, 998 (Cal. 1999) ("It is, of course, generally presumed that when a word is used in a particular sense in one part of a statute, it is intended to have the same meaning if it appears in another part of the same statute.) (internal quotation marks omitted).  The State's proposed construction of Section 98005 is unsustainable.

## CONCLUSION

For the foregoing reasons, the Tribe respectfully requests that this Court grant its motion for judgment on the pleadings and deny the State's cross-motion by making a statutory finding that the State has failed to negotiate in good faith, and ordering the parties to proceed pursuant to the remedial process set forth in 25 U.S.C. § 2710(d)(7)(B)(iii)-(vii).

REPLY MEM. IN SUPPORT OF TRIBE'S MOTION FOR JUDGMENT ON THE PLEADINGS

1   DATED:  March 12, 2015                Respectfully submitted,

2

3

4                                         By:      /s/ Christopher E. Babbitt

5

6                                         DANIELLE SPINELLI (*pro hac vice*)
                                          CHRISTOPHER E. BABBITT (SBN 225813)
7                                         WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
8                                         1875 Pennsylvania Avenue, N.W.
                                          Washington, D.C.  20006
9                                         Telephone:  (202) 663-6000
                                          Facsimile:  (202) 663-6363
10                                        E-mail: christopher.babbitt@wilmerhale.com

11                                        JOHN A. MAIER (SBN 191416)
                                          MAIER PFEFFER KIM GEARY & COHEN LLP
12                                        1440 Broadway, Suite 812
                                          Oakland, CA  94612
13                                        Telephone:  (510) 835-3020
                                          Facsimile:  (510) 835-3040
14                                        E-mail: jmaier@jmandmplaw.com

15                                        Attorneys for Plaintiff THE ESTOM YUMEKA
                                          MAIDU TRIBE OF THE ENTERPRISE
16                                        RANCHERIA, CALIFORNIA

17

18

19

20

21

22

23

24

25

26

27

28

- 18 -

1

2

3

**UNITED STATES DISTRICT COURT**

4

**EASTERN DISTRICT OF CALIFORNIA**

5

6

THE ESTOM YUMEKA MAIDU TRIBE OF THE ENTERPRISE RANCHERIA, CALIFORNIA,

Case No. 14-cv-01939

7

Plaintiff,

8

v.

**CERTIFICATE OF SERVICE**

9

STATE OF CALIFORNIA,

10

Defendant.

11

12

13

        I hereby certify that, on March 12, 2015, I electronically filed the foregoing document with

14

the Clerk of the Court for the U.S. District Court for the Eastern District of California using the

15

CM/ECF system, which sent notification of such filing to counsel of record in this case.

16

17

18

19

20

By:    _/s/ Christopher E. Babbitt_

21

22

CHRISTOPHER E. BABBITT (SBN 225813)
WILMER CUTLER PICKERING HALE AND DORR LLP

23

1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006

24

Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363

25

E-mail: christopher.babbitt@wilmerhale.com

26

27

28

CERTIFICATE OF SERVICE