KAMALA D. HARRIS
Attorney General of California
SARA J. DRAKE
Senior Assistant Attorney General
JAMES G. WAIAN, State Bar No. 152084
Deputy Attorney General
NEIL D. HOUSTON, State Bar No. 168058
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 322-5476
 Fax: (916) 327-2319
 E-mail: Neil.Houston@doj.ca.gov
*Attorneys for Defendant, State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE ESTOM YUMEKA MAIDU TRIBE OF THE ENTERPRISE RANCHERIA, CALIFORNIA,**<br><br>                                    Plaintiff,<br><br>v.<br><br>**STATE OF CALIFORNIA,**<br><br>                                    Defendant. | 2:14-cv-01939-TLN-CKD<br><br>**STATE OF CALIFORNIA'S REPLY TO THE ESTOM YUMEKA MAIDU TRIBE OF THE ENTERPRISE RANCHERIA'S OPPOSITION TO THE STATE OF CALIFORNIA'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:          April 9, 2015<br>Time:         2:00 p.m.<br>Dept:          2<br>Judge:        The Honorable Troy L. Nunley<br>Trial Date:  None Set<br>Action Filed: 8/20/2014 |

## INTRODUCTION

The undisputed facts of this case establish that the Estom Yumeka Maidu Tribe of the Enterprise Rancheria (Tribe or Enterprise) and the State of California (State) – acting through its Governor in accordance with state constitutional law – negotiated a class III gaming compact (the Enterprise Compact) pursuant to the Indian Gaming Regulatory Act (IGRA). But the Enterprise Compact did not take effect because the Legislature took no action to ratify it. This was the first time in 15 years that this has occurred.

The fundamental issue before the Court is whether the Legislature's inaction with regard to the ratification of the Enterprise Compact constitutes bad faith negotiation under IGRA justifying the imposition of IGRA's bad faith remedies upon the State. Such relief is unwarranted and would be unprecedented. The Tribe supports its request for relief with an argument that fundamentally attacks the validity of article IV, section 19(f) of the California Constitution, which is the sole basis for tribal class III gaming in California. The Court should reject the Tribe's argument because legislative *ratification* is distinct – factually and legally – from gubernatorial *negotiation*. The facts alleged in the Tribe's Complaint do not warrant the imposition of IGRA's bad faith remedy with an attendant invalidation of the bifurcated compacting procedure specified in article IV, section 19(f) of the California Constitution. Accordingly, the State respectfully requests that its motion for judgment on the pleadings be granted, and that the Tribe's Complaint be dismissed.

## ARGUMENT

### I. IGRA DOES NOT GUARANTEE TRIBES THE RIGHT TO CONDUCT CLASS III GAMING; IN CALIFORNIA, IT IS ONLY PERMITTED SUBJECT TO THE TERMS OF THE CALIFORNIA CONSTITUTION

IGRA does not guarantee Indian tribes the right to operate class III gaming. For example, if a state prohibits class III gaming by all persons and entities, IGRA imposes no obligation upon that state to negotiate class III gaming compacts with tribes. No class III gaming occurs in that state, and the tribes located there have no recourse. *See* 25 U.S.C. § 2170(d)(1)(B).

In those states that allow class III gaming, only two circumstances allow tribes to participate: 1) the tribe successfully negotiates a class III gaming compact with a state; or 2) the

tribe obtains a federal court judgment with a finding of bad faith negotiation, or a failure to negotiate, against a state, and subsequently obtains authority to conduct class III gaming pursuant to terms approved by the Secretary of the Interior rather than the state. Without a federal court judgment finding of bad faith by a state, the Secretary is not authorized to approve class III gaming in the absence of a valid Tribal-State compact. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 50, 74-75 (1996). No other circumstances allow a tribe to conduct class III gaming. In California, class III gaming compacts can only be entered into pursuant to the bifurcated process expressly provided by article IV, section 19 (f) of the California Constitution, under which the Governor negotiates, and the Legislature approves or rejects by exercising the power of ratification. California's use of this procedure cannot be deemed to deprive a tribe of any right conferred by IGRA.

## II. IGRA DOES NOT SPECIFY THE INTERNAL PROCEDURES STATES MUST FOLLOW TO ENTER INTO GAMING COMPACTS

Aside from the requirement that a state must, under specified circumstances, negotiate in good faith for a compact when requested to do so by a tribe, IGRA is silent about the internal procedures a state may require in order to enter into a Tribal-State class III gaming compact. Enterprise concedes that "IGRA allows States to determine their internal processes for approval of gaming compacts...." (Opp'n, 11:1-2.) California's bifurcated compacting process, in which the Governor negotiates and the Legislature ratifies, arises from article IV, section 19(f) of the California Constitution, which establishes the procedures for approval of compacts for tribal class III gaming in California. It is an exception to the otherwise absolute prohibition of class III gaming in the state, and the exception is unequivocally conditioned upon a two-part process for entering into a Tribal-State compact—first the Governor, and only the Governor, negotiates the compact with the tribe, and, second, the Legislature may invest that compact with the force of law through its power of ratification. This process provides a check and balance between the State's executive and legislative branches.

Contrary to the Tribe's contention, the State's power to prohibit class III gaming, including by Indian tribes, in its entirety if it chooses, does not arise from IGRA as a "delegated power of

2

national sovereignty" (Opp'n, 10:3-5) – it is an attribute of state sovereignty that Congress did not invade.[1] Class III gaming activities are not lawful on Indian lands located in states that do not permit class III gaming (25 U.S.C. § 2710(d)(1)(B)), and IGRA's negotiation and compacting requirements relating to class III gaming do not apply to such states. California has provided a limited exception to its otherwise absolute prohibition of class III gaming specifically in order to allow tribal class III gaming, and that exception is conditioned upon its bifurcated compacting process. The exception, and its conditions, arise from the State's inherent authority to prohibit class III gaming entirely, and from the State's concomitantly included authority to permit class III gaming only subject to specified limitations and procedures.

In every reported IGRA "bad faith" case, the plaintiff tribe has alleged either that the state refused to negotiate, or that the state demanded impermissible terms and thus failed to negotiate in good faith. Here, Enterprise cannot assert either of those things. In an effort to bring the entirety of California's bifurcated compacting process within the ambit of IGRA's bad faith negotiation provision, Enterprise seeks to convert the Legislature's distinct power of ratification into a duty to participate with the Governor in negotiations in the manner of one of the players in a labor negotiation conducted under the NLRA. Such an interpretation of IGRA would abrogate a significant aspect of state sovereignty by altering the fundamental conditions and limitations of the underlying authorization of tribal class III gaming in California.

The Tribe's suggestion, in addition to being contrary to constitutional and statutory requirements, which assign the role of compact negotiation to the Governor (Cal. Const., art. IV, § 19(f); Cal. Gov't Code §§ 12012.5, 12012.25, subd. (d)), and accords to the Legislature the ability to ratify the negotiated compact (Cal. Const., art. IV, § 19(f); Cal. Gov't Code § 12012.25, subd. (e)), additionally fails to take into account the operation of the legislative organ of state government, assuming that Enterprise contemplates that the Legislature should be at the

---

[1] Prior to the amendment of article IV, Section 19 of the California Constitution by Proposition 1A in 2000 to permit limited tribal class III gaming, slot machines and banking and percentage card games had been absolutely prohibited in California since no later than the enactment of California Penal Code section 330a in 1911. *See Hotel Employees & Restaurant Employees Internat. Union v. Davis*, 21 Cal.4th 585, 592-593 (1999) (banking games prohibited in 1872, percentage games prohibited in 1885, slot machines prohibited in 1911).

3

negotiating table, agreeing to terms, making counterproposals, and bargaining with the Tribe. Even if the Legislature could be present in its entirety to negotiate for purposes of hammering out a negotiated compact – an obvious impossibility – it would still be required to ratify – that is, formally consent to – the ultimate product, once negotiation was complete. (Cal. Const., art. IV, § 19(f).) Specifying how ratification is to be achieved, the Legislature has previously stipulated that it be by "approval of each house of the Legislature, the majority of the membership thereof concurring." (See, Cal. Gov't Code § 12012.5, subd. (c).) Assuming a legislative presence in some lesser form at the bargaining table, something less than the full authority of the Legislature would necessarily be exercised since the Legislature cannot delegate away its ultimate lawmaking authority. (*State Bd. of Dry Cleaners v. Thrift-D-Lux Cleaners*, 40 Cal.3d 436, 448 (1953); *Bayside Timber Co. v. Bd. Of Supervisors of San Mateo County*, 20 Cal.App.3d 1, 10 (1971).) For fulfillment of even this lesser role, those at the table for the Legislature would necessarily need to consult regularly with the Legislature to be able to carry its positions back to the negotiating table. The resulting need of those at the table to queue for the attention of the Legislature would undoubtedly mean a negotiating process extending over multiple sessions of the Legislature, whose ultimate ratification decision could not be hypothecated by any Legislature preceding it. (*See In re Collie*, 38 Cal.2d 396, 398 (1952); *French v. Senate of California*, 146 Cal. 604, 608 (1905); *People's Advocate, Inc. v. Superior Court*, 181 Cal.App.3d 316, 328 (1986).) The result of the Tribe's suggestion, even if constitutionally permissible, which it is not, would thus be ineffectual for its presumed purpose of availing the Tribe of any greater certainty of result within any shorter period of time.

As problematic as the Tribe's argument is with respect to the Legislature, it becomes worse if extended, as for the sake of consistency it must, to the voters of the State, who have the power to review the Legislature's ratification of a compact through the referendum process. (Cal. Const., art. II, § 9(a).) Obviously, while the voters have the power to reject a compact that has been ratified by the Legislature, the voters cannot possibly participate in negotiations with tribes. The Tribe's contention that the Legislature must participate in the negotiation of compacts is impractical and would be counterproductive, in addition to being precluded by state law. The

4

negotiation of compacts is unequivocally delegated to the Governor, subject to the Legislature's power of ratification. (Cal. Const., art IV, § 19(f).) The Legislature cannot and does not negotiate compacts, and its action or inaction with respect to ratification cannot serve as a basis for a finding of bad faith negotiation under IGRA or the imposition of IGRA's bad faith remedy.

### III. THIS CASE DOES NOT INVOLVE SERIAL REJECTION OF A COMPACT BY THE LEGISLATURE.

The Tribe argues that the State's suggestion that a tribe's recourse following the Legislature's failure to ratify the compact it has negotiated with the Governor would be to request further negotiations toward a new compact is "absurd" because it would lead to a "never-ending cycle of fruitless negotiations," and would allow the Legislature to nullify compacts indefinitely without consequence under IGRA. The facts of this case do not indicate either of those things. Here, the Legislature failed to take up for ratification the first and only compact negotiated between Enterprise and the State, and it is an unprecedented event. IGRA's bad faith remedy should not be imposed on the State on the basis of the facts that are alleged in the Tribe's Complaint.

### IV. THE FACT THAT THE LEGISLATURE DID NOT ACT UPON THE ENTERPRISE COMPACT FOR TWO YEARS DOES NOT CONSTITUTE BAD FAITH ON THE PART OF THE STATE

It is undisputed that the Tribe and State mutually agreed to include a provision in the Enterprise Compact that would cause it to expire if not ratified and put into effect within two years of its execution. The Tribe's Complaint alleges no facts that tend to show that the inclusion of the two-year time period occurred as a result of bad faith negotiation by the State, or from any failure of the State to negotiate when requested to do so by the Tribe.

### V. THE TRIBE'S SUIT IS BARRED BY THE STATE'S ELEVENTH AMENDMENT IMMUNITY

As the State has argued in its moving papers, absent a waiver of its sovereign immunity, a state is immune from suits to enforce IGRA. *See Seminole Tribe of Florida v. Florida, supra,* 517 U.S. at 47 (1996). The Tribe's argument that California Government Code section 98005 waives the State's immunity from the claims made in this case is based on the impermissible attempt to extend and apply IGRA's good faith negotiation requirement to the Legislature's

5

failure to ratify the Enterprise Compact. The waiver of immunity contained in California Government Code section 98005 expressly applies only to actions arising from the State's "refusal to enter into negotiations" or refusal to "conduct those negotiations in good faith." Cal. Gov't Code § 98005. As the facts alleged in the Complaint show, the State, acting through the Governor, entered into negotiations with Enterprise for a class III gaming compact, and, acting through the Governor, negotiated in good faith, as evidenced by the execution of the Enterprise Compact on August 30, 2012. (Compl., ¶ 48.) For the reasons stated above and in the State's moving papers, the Legislature's failure to ratify the Enterprise Compact does not, indeed cannot, constitute bad faith in negotiations within the meaning of IGRA. Accordingly, this case lacks both of the possible predicates for a finding a waiver under California Government Code section 98005, this Court lacks subject matter jurisdiction over Enterprise's claims, and the Complaint fails to state a claim upon which relief may be granted.

## CONCLUSION

For the foregoing reasons, the State respectfully requests that its cross-motion for judgment on the pleadings be granted and the Tribe's Complaint be dismissed.

Dated: March 26, 2015

Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
SARA J. DRAKE
Senior Assistant Attorney General
JAMES G. WAIAN
Deputy Attorney General


/s/ NEIL HOUSTON


NEIL D. HOUSTON
Deputy Attorney General
*Attorneys for Defendant State of California*

# CERTIFICATE OF SERVICE

Case Name: **Estom Yumeka Maidu Tribe v. State of California, et al.** No. **2:14-cv-01939-TLN-CKD**

I hereby certify that on **March 26, 2015**, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**STATE OF CALIFORNIA'S REPLY TO THE ESTOM YUMEKA MAIDU TRIBE OF THE ENTERPRISE RANCHERIA'S OPPOSITION TO THE STATE OF CALIFORNIA'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **March 26, 2015**, at San Diego, California.

| | |
|---|---|
| Neil D. Houston | /s Neil D. Houston |
| Declarant | Signature |